## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

| | |
|---|---|
| **BRANDON HENDRIX**, | ) |
| Plaintiff, | ) No.  3:20-cv-70 |
| vs. | ) Hon. Rebecca Grady Jennings |
| **RADIAL, INC.**, | ) |
| Defendant. | ) |

## **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND COMPEL ARBITRATION**

Defendant Radial, Inc. ("Defendant" or "Radial"), by and through counsel, respectfully submits the following Memorandum in Support of its Motion to Dismiss and Compel Arbitration (the "Motion") to demonstrate why Plaintiff Brandon Hendrix ("Plaintiff") should be held to the parties' mutual arbitration agreement to which he consented at the onset of his employment. Pursuant to this agreement, Plaintiff and Defendant unequivocally agreed to waive their right to trial or hearing before this Court or a Jury and to resolve all issues and disputes arising from or relating to their employment relationship in binding and final arbitration. As such, Plaintiff's Complaint should be dismissed and the claims set forth in his Complaint must be resolved through binding arbitration as he agreed. The agreement Plaintiff executed is fully enforceable, pursuant to the Federal Arbitration Act ("FAA"), and it applies to all of his claims against Radial. Accordingly, the parties' mutual agreement to arbitrate must be enforced, and all of Plaintiff's employment-related claims asserted in this action should be dismissed and compelled to arbitration under the terms of the parties' agreement.

## I.  INTRODUCTION

Plaintiff filed the instant action asserting employment-related claims of race discrimination and retaliation. *See* DE #1 Exhibit 1. (Complaint). Both of these claims are captured under the parties' mutual arbitration agreement that specifically addresses any and all disputes, claims, or controversies arising out of his employment or the termination of that employment (except those specifically excluded) and requires that they be brought in final, binding individual arbitration administered by the American Arbitration Association "AAA"), rather than in this or any other Court.

## II.  RELEVANT FACTUAL BACKGROUND

Radial hired Plaintiff for the role of driver on August 27, 2017. *See* **Exhibit 1** (Declaration of Michelle Buckler). Plaintiff and Radial executed a Mutual Arbitration Agreement ("Arbitration Agreement") on August 25, 2017. *See* **Exhibit 2** (Arbitration Agreement).

The Mutual Arbitration Agreement expresses the parties' mutual agreement to arbitrate any and all disputes they may have against each other that arise from or relate to their employment relationship. *Id.* Specifically, the Arbitration Agreement entered into by the parties encompasses:

> [A]ny and all disputes, demands, claims, or controversies . . . they may have against each other . . . ,which arise from or relate to . . . the employment relationship . . ., whether the claim arise in law or equity, in tort, contract or pursuant to statute, regulations or ordinance, under local, state or federal law . . .

2

*See* **Exhibit 2** at ¶ 1. Further, the Arbitration Agreement specifically advises and emphasizes in all-caps and bold language placing the parties on explicit note that they are:

> **WAIVING ANY RIGHT TO A TRIAL OR HEARING BEFORE A COURT OF JURY OR BY ADMINISTRATIVE PROCEEDING OF ANY AND ALL DISPUTES AND CLAIMS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT AND ANY RIGHT TO BRING A CLASS OR COLLECTIVE ACTION OR TO BE A MEMBER OF A CLASS OF COLLECTIVE ACTION.**

*See* **Exhibit 2** at ¶ 14 (emphasis in original).

Despite the parties' Mutual Arbitration Agreement, on January 3, 2020, Plaintiff filed the instant lawsuit against Radial asserting two employment-related claims, including retaliation and race discrimination/hostile work environment under KRS Chapter 344, the Kentucky Civil Rights Act. *See* DE #1 Exhibit 1. Plaintiff should have filed his claims in final, binding arbitration before the AAA instead, as he agreed.

### III.  ARGUMENT

#### A.  The Federal Arbitration Act Applies and Controls

The Federal Arbitration Act ("FAA") applies to all arbitration agreements "involving commerce." 9 U.S.C. § 2. The FAA provides, in part:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for revocation of any contract.

3

*See id.* (emphasis added). The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' – words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause Power." *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

The FAA applies in the instant case, and Plaintiff's lawsuit should be dismissed and resolved in individual arbitration, as Plaintiff agreed. Radial is engaged in transactions involving interstate commerce. A Pennsylvania corporation with its principal place of business located in King of Prussia, Pennsylvania, *see* **Exhibit 3** (Secretary of State Record), Radial employs individuals and operates across numerous locations in various states, including California, Colorado, Florida, Georgia, Nevada, New Jersey, Ohio, Pennsylvania, Wisconsin, and Kentucky, where Plaintiff worked. *See* https://www.radial.com/about/locations (last accessed June 24, 2019); *See* **Exhibit 1** at ¶ 3. Courts have consistently held such multistate operations and transactions to involve interstate commerce, triggering FAA application. *See, e.g., Treved Exteriors, Inc. v. Lakeview Const., Inc.*, No. 13-CV-83-DLB-JGW, 2014 WL 1047117, at *6 (E.D. Ky. Mar. 18, 2014) ("Pursuant to the subcontracts at issue in this case, an Ohio entity provided services for a Wisconsin entity at a construction site in Kentucky. Because there has been a transaction that, in fact, affected interstate commerce, the FAA is applicable to the arbitration provisions of the subcontracts.").

Accordingly, the Mutual Arbitration Agreement, to which Plaintiff agreed to be bound, "involves commerce," and the FAA squarely applies and governs enforcement of the parties' Mutual Arbitration Agreement at hand.

**B.     Plaintiff Entered a Valid and Enforceable Arbitration Agreement**

Plaintiff must arbitrate his claims pursuant to the parties' Mutual Arbitration Agreement. Radial is fully entitled to the benefit of its bargain, and this matter should be sent to arbitration.

The FAA "embodies a 'liberal federal policy favoring arbitration agreements.'" *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotations and citations omitted). To that end, it was the intent of Congress in enacting the FAA "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also American Express Co. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) ("courts must 'rigorously enforce' arbitration agreements according to their terms" (internal citations omitted); *Stolt-Neilson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("[W]e have said on numerous occasions that the central or 'primary' purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms") (internal quotations and citations omitted). The FAA "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *See Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985). The United States Supreme Court recently reiterated its long-held position that the FAA

"establishes a liberal federal policy favoring arbitration agreements," and that courts must enforce agreements as written without delay or obstruction. *See Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621, 1632 (2018) (internal quotations and citations omitted).

Here, the parties entered into a valid and enforceable agreement to arbitrate employment-related legal disputes. In determining whether parties agreed to arbitrate a particular dispute, the Court must look to applicable contract principles under state law. *See Kruse v. AFLAC Int'l, Inc. et al.*, 458 F. Supp. 2d 375, 382 (E.D. Ky. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). However, federal policy favoring arbitration should be taken into consideration when applying state law. *See id.* (citing *Inland Bulk Transfer Co. v. Cummings Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003).

It is black-letter law in Kentucky that a valid contract consists of offer and acceptance, complete terms, and consideration. *See AT&T Mobility Services LLC v. Payne*, No. 3:17-CV-649-CRS, 2018 WL 935441, *2 (W.D. Ky. Feb. 16, 2018); *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013). Each of these elements are firmly established in this case, and there are no grounds upon which Plaintiff can successfully argue to avoid enforcement of the Mutual Arbitration Agreement.

Radial Holdings L.P. and Plaintiff are the primary parties to the Mutual Arbitration Agreement, however the Agreement plainly includes Radial Holdings' affiliates or subsidiaries. *See* **Exhibit 2** at ¶ 1. Radial Inc., Plaintiff's former employer, is a subsidiary or Radial Commercial Inc., which is a subsidiary of Radial Holdings, L.P. *See* **Exhibit 1** at ¶ 2. Thus, the agreement is plainly enforceable to the instant parties. As to offer, the

terms of the Mutual Arbitration Agreement reflect plain language such that a person of ordinary intelligence would comprehend the language. The Agreement clearly and indisputably covers "any and all disputes, demands, claims, or controversies . . . they may have against each other . . ., which arise from or relate to . . . the employment relationship." See **Exhibit 2** at ¶ 1.

Plaintiff unequivocally accepted the terms offered in the Mutual Arbitration Agreement by electronic signature on August 25, 2017. See **Exhibit 2** at ¶ 5. Kentucky courts have consistently enforced agreements with electronic signatures and even agreements where no signature has been affixed at all, but subsequent actions document an intent to be bound. See, e.g., Aldrich v. University of Phoenix, Inc., No. 3:15-CV-578-JHM, 2016 WL 915287, at *8 (W.D. Ky. Mar. 4, 2016) (citing Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 978 (6th Cir. 2007) and various other Circuits holding the same); Braxton v. O'Charley's Restaurant Properties, LLC, 1 F. Supp. 3d 722, 726 (W.D. Ky. 2014). Plaintiff's electronic signature falls squarely within Kentucky law on acceptance of agreements and does not even require consideration of his fully consistent actions following his entry into the arbitration agreement.

Finally, there is adequate consideration for the agreement to arbitrate. Employment, whether initial or continued, constitutes valid consideration for arbitration agreements. See Aldrich, 2016 WL 915287 at *9. Additionally, not only did Plaintiff agree to arbitrate any employment-related disputes, but Radial also agreed. Mutual promises to forebear taking certain action (in this case, the mutual agreement to proceed to arbitration and waive the right to have employment-related disputes heard by a court)

also constitute sufficient consideration for the arbitration agreement. *See id.* (finding sufficient consideration by both parties agreeing to "refrain from filing employment–related claims in a court of law and to arbitrate them instead."); *Payne*, 2018 WL 935441, *3 ("Consideration exists when parties choose to mutually give up their right to a trial by jury"); *Energy Home, Div. of S. Energy Homes, Inc.*, 406 S.W.3d at 835 (mutual promises to arbitrate constitutes adequate consideration). Under either theory, or both, the parties' Arbitration Agreement reflects sufficient consideration. This Court should follow the well-reasoned decisions noted herein and enforce the Mutual Arbitration Agreement.

### C.   The Arbitration Agreement Covers Plaintiff's Claims

Plaintiff's claims under the Kentucky Civil Rights Act indisputably fall within the scope of the Mutual Arbitration Agreement. The agreement broadly encompasses "any and all disputes, demands, claims, or controversies" that arise from or relate to the parties' employment relationship. *See* **Exhibit 2** at ¶ 1. "Where . . . the arbitration clause is broad, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration." *See Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). No such exclusionary provision exists to remove Plaintiff's claims from the parties' Mutual Arbitration Agreement in the case at hand. Plaintiff's claims concern whether he experienced race discrimination, hostile work environment, and retaliation in the workplace. By explicitly referencing "any and all disputes, demands, claims, . . . which arise from or relate to . . . the employment relationship . . .," the Mutual Arbitration Agreement plainly covers these claims. *See* **Exhibit 2** at ¶ 1.

## IV. DISMISSAL OF THIS LAWSUIT IS APPROPRIATE

Given that all of the employment related claims asserted by Plaintiff are subject to the Mutual Arbitration Agreement he executed, Radial respectfully requests that this matter be dismissed in its entirety. *See Green v. Ameritech*, 200 F.3d 967, 973 (6th Cir. 2000) (affirming dismissal by district court and recognizing that the "weight of authority clearly supports dismissal of the case when all issues raised in the district court must be submitted to arbitration.").

## V. CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiff's claims and compel Plaintiff to final, binding arbitration, exactly as he agreed.

This the 30th day of January, 2020.

Respectfully submitted,

*/s/ LaToi D. Mayo*
LaToi D. Mayo
Littler Mendelson, P.S.C.
333 West Vine Street, Suite 1720
Lexington, KY 40507
Telephone:  (859) 317-7970
Facsimile:  (859) 201-1250
lmayo@littler.com

*Counsel for Defendant*

9